**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1071-24

MARK SOLARO,

     Plaintiff-Appellant,

v.

FIRSTENERGY CORPORATION,
FIRSTENERGY SERVICE COMPANY,
JERSEY CENTRAL POWER & LIGHT
COMPANY, TOWNSHIP OF WEST
MILFORD, PASSAIC COUNTY, NEW
JERSEY DEPARTMENT OF
TRANSPORTATION and STATE
OF NEW JERSEY,

     Defendants-Respondents,

and

MARION NOVACK and
EDWARD NOVACK,

     Defendants.

_____

Argued December 17, 2025 – Decided July 20, 2026

Before Judges Gummer, Vanek, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0160-22.

Ruxandra M. Laidacker argued the cause for appellant (Kline & Specter, PC, attorneys; Charles L. Becker, Ruxandra M. Laidacker, Kimberly M. Collins, Frank Mangiaracina and Benjamin O. Present, on the briefs).

Marco P. DiFlorio argued the cause for respondents FirstEnergy Corporation, FirstEnergy Service Company and Jersey Central Power & Light Company (Salmon, Ricchezza, Singer & Turchi, LLP, attorneys; Marco P. DiFlorio, on the brief).

Semeraro & Fahrney, LLC, attorneys for respondent Township of West Milford (R. Scott Fahrney, on the brief).

Eric M. Bernstein & Associates, LLC, attorneys for respondent Passaic County (Eric M. Bernstein, on the brief; Philip G. George, of counsel and on the brief).

Genova Burns, LLC, attorneys for amicus curiae New Jersey Utilities Association (Kenneth J. Sheehan, of counsel and on the brief).

PER CURIAM

In this tree-fall case, plaintiff Mark Solaro appeals from summary-judgment orders dismissing with prejudice his negligence claims against defendants Jersey Central Power & Light Company (JCP&L) and FirstEnergy Service Company (FESC). Based on our de novo review and unpersuaded by plaintiff's extended duty argument, we affirm.

2

I.

Plaintiff was injured when a tree fell on a car he was operating on State Route 23 in West Milford Township on May 3, 2019. Following his submission of an initial pleading, plaintiff filed an amended complaint on March 26, 2021, naming as defendants JCP&L, FESC, FirstEnergy Corporation, the Township of West Milford, Passaic County, the New Jersey Department of Transportation (NJDOT), the State of New Jersey, Marion Novack, Edward Novack, and fictitious entities that allegedly provided arborist services to defendants. The complaint contained causes of action against all defendants for negligence and negligence per se. Plaintiff asserted, among other things, JCP&L and FESC were negligent in that they had failed to perform an alleged duty to "inspect, maintain, monitor, groom, cut down, and manage the trees surrounding power lines along Route 23 North in West Milford Township," including the tree that fell on plaintiff's car.

In the spring of 2022, plaintiff stipulated to the dismissal of the Novack defendants and the Township. The remaining defendants moved for summary judgment. Plaintiff withdrew opposition to FirstEnergy Corporation's motion and consented to that party's dismissal from the case. The court denied the

3

State's, the County's, and NJDOT's motions. Plaintiff subsequently stipulated to the dismissal of those defendants.

After hearing argument on December 14, 2023, the trial court entered orders and placed a decision on the record granting JCP&L's and FESC's motions and dismissing the claims against them with prejudice. The court determined the tree that had fallen on plaintiff's car was located in a preserve in a public park owned by Passaic County. The court also found a power line was next to the tree, but plaintiff's injuries were not caused by the power line, an undisputed fact confirmed by plaintiff's counsel during argument. In its decision, the court relied on McGlynn v. State, 434 N.J. Super. 23 (App. Div. 2014), a tree-fall case in which we affirmed an order granting JCP&L summary judgment, holding it did not have a duty "to tend to . . . trees so as to promote highway safety," id. at 34.

Plaintiff appeals from the December 14, 2023 orders. Plaintiff also listed in his notice of appeal the November 7, 2024 stipulation dismissing Passaic County. Plaintiff did not brief any issues regarding that stipulation or the negligence per se claim, and his counsel confirmed during oral argument before this court plaintiff was not pursuing an appeal of that stipulation or the dismissal of the negligence per se count. See Morris v. T.D. Bank, 454 N.J. Super. 203,

4

206 n.2 (App. Div. 2018) (finding "[a]n issue not briefed is deemed waived on appeal"). After plaintiff filed his notice of appeal, we granted leave to appear as amicus curiae to the New Jersey Utilities Association, which urges us to affirm.

On appeal, plaintiff argues JCP&L and FESC owed him a duty of care pursuant to New Jersey case law and vegetation-management regulations applicable to electric distribution companies (EDCs). He also contends the court erred in relying on McGlynn when it determined these defendants did not owe a duty of care to him under the circumstances of this case. We disagree and affirm.

II.

"We review a grant of summary judgment de novo, applying the same standard that governed the trial court's determination." Padilla v. Young Il An, 257 N.J. 540, 547 (2024). Summary judgment is proper if, viewing the evidence in a light most favorable to the non-moving party, the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)).

McGlynn involved a 2003 incident in which a tree fell on a passing vehicle, killing its driver and injuring the other passengers. McGlynn, 434 N.J.

5

Super. at 27. "As the tree fell, it brought down power lines along the roadside." Ibid. In that case, we rejected the plaintiffs' argument that JCP&L had a duty "to keep power lines free from encroaching vegetation, in furtherance of the uninterrupted provision of power to [its] customers, and th[e] . . . failure to remove a dead tree that was not affecting the flow of electricity . . . warrant[ed] the imposition of such a duty." Id. at 32.

We determined JCP&L "had a clear and defined commitment to keep vegetation controlled in order to prevent interruptions in service," but "[t]o expand that commitment to include maintenance of vegetation for the benefit of passing motorists, where power lines are unaffected, would create an onerous burden without a corresponding benefit where the responsibility already exists, to a greater or lesser extent, on individual property owners and NJDOT." Ibid. We held "[t]he private land owner bears the principal responsibility to exercise due care over trees that might pose a hazard to travelers on an adjoining highway" and that "the obligation to monitor trees over hundreds of miles of roadway for a broad purpose such as the safety of passing motorists would be an overwhelming burden on a private entity," such as JCP&L. Id. at 33-34. We concluded "no societal goal [wa]s advanced by the imposition of a duty [on

6

JCP&L] . . . . to tend to the trees so as to promote highway safety" and that the duty "fell on the private landowner and NJDOT." Id. at 34.

Just as he argued before the trial court, plaintiff argues on appeal McGlynn does not apply to his case. He contends McGlynn was premised solely on JCP&L's contractual duties and the incident at issue in McGlynn occurred before the New Jersey Board of Public Utilities (the Board) promulgated vegetation-management regulations in 2006. According to plaintiff, those new regulations imposed a new public-safety duty on EDCs that requires them to prevent non-electrical hazards and, consequently, to remove trees near power lines that pose a non-electrical risk to passing motorists. We are unpersuaded by those arguments. We do not view McGlynn to be so limited nor the regulations so expansive.

"Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Holm v. Purdy, 252 N.J. 384, 402 (2022) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). A court's "determination whether to impose a duty may be informed by a statute, even when the statute creates no civil cause of action for a violation." Id. at 403. Regulations can also evidence

the existence of a duty of care.  See Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 361 (2016) (finding violation of regulatory standards "may be considered as evidence of negligence"); Alloway v. Bradlees, Inc., 157 N.J. 221, 236 (1999) (applying to regulations "the well-established principle that the violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established").

Because the meaning of a statute is a question of law, we review a trial court's statutory interpretation de novo.  Fuster v. Twp. of Chatham, 259 N.J. 533, 546 (2025).  In performing that de novo review, we are guided by the well-established principles of statutory construction.  Those principles apply equally to our interpretation of regulations.  Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985) (finding "[r]egulations are subject to the same rules of construction as a statute").

When interpreting a statute, we "determine and give effect to the Legislature's intent."  In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)).  "[S]tatutory construction begins with an examination of the plain language of

A-1071-24

the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). We neither "ignore the words the Legislature chose to include in a statute, nor . . . add language the Legislature chose not to include." State v. C.C.W., 481 N.J. Super. 551, 572 (App. Div. 2025). To determine legislative intent, we "look not only at the particular statutory language but also to the design of the statute as a whole." Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 219 (App. Div. 2004); see also In re Est. of Brown, 448 N.J. Super. 252, 260 (App. Div. 2017) (same). Applying those principles, we consider the regulations on which plaintiff relies.

In N.J.S.A. 48:2-13, the Legislature authorized the Board to regulate "all public utilities," which include corporations that own any "electricity distribution" systems. In N.J.S.A. 48:3-96(a) of the Electric Discount and Energy Competition Act of 1999, N.J.S.A. 48:3-49 to -98.5, the Legislature authorized the Board to "adopt . . . standards for the inspection, maintenance,

repair and replacement of the distribution equipment and facilities of electric public utilities."

Citing those statutory provisions as its authority, the Board in 2006 adopted new specified standards for vegetation management. 38 N.J.R. 5396(a) (Dec. 18, 2006). The Board already had in place a regulation requiring EDCs to have "inspection and maintenance programs . . . as appropriate to furnish safe, proper and adequate service" and to "mitigat[e] those interruption causes with the greatest impact on reliability such as those related to equipment, vegetation, and animals." N.J.A.C. 14:5-7.7 (2001); see also 33 N.J.R. 123(a) (Jan. 2, 2001). Subsequently codified at N.J.A.C. 14:5-9.1 to 9.10, the new regulations set forth more specific "requirements that EDCs shall follow in managing vegetation in proximity to an energized conductor in order to ensure public safety and the efficient and reliable supply of electric power using integrated vegetation management and sound arboricultural practices," N.J.A.C. 14:5-9.1. The new regulations include standards for an "annual visual inspection of all energized conductors . . . to determine whether vegetation management is needed," N.J.A.C. 14:5-9.4, and procedures to follow if an EDC determines it should "remove or mitigate [a] hazard tree," N.J.A.C. 14:5-9.5. The regulations require an EDC to "develop its own vegetation management standards and guidelines,"

consistent with the regulations, prioritizing work based on "[t]he extent of the potential for vegetation to interfere with the energized conductor," "[t]he voltage of the affected energized conductor," and "[t]he relative importance of the affected energized conductor in maintaining safety and reliability." N.J.A.C. 14:5-9.6(c) (emphasis added).

N.J.A.C. 14:5-1.2 defines terms the Board used in the new regulations. "Vegetation management" is defined as "the removal of vegetation . . . to maintain safe conditions around energized conductor(s), and ensure reliable electric service." Ibid. "Vegetation management consists of . . . methods to control vegetation in order to prevent hazards caused by the encroachment of vegetation on energized conductor(s) and to provide utility access to the conductor." Ibid. (emphasis added). Reliability is defined as "the degree to which safe, proper and adequate electric service is supplied to customers without interruption." Ibid. A "'[h]azard tree' is a structurally unsound tree on or off [a public utility's] right of way that could strike electric supply lines when it fails." Ibid. The term "[m]itigate" is defined as "the process of diminishing risk associated with hazard trees . . . to make safe and eliminate or adequately reduce the risks of the hazard tree to the distribution system." Ibid. (emphasis added).

The definitions and new regulations are devoid of any reference to motorists or vehicular passengers.

Based on our de novo review and application of statutory-construction principles, we reach the same conclusion we reached in McGlynn, which is wholly applicable to this case. Like this case, McGlynn involved harm caused by a fallen tree and not downed power lines near the fallen tree. 434 N.J. Super. at 27. Neither this case nor McGlynn involved harm caused by electric-company equipment. Cf. Seals v. County of Morris, 210 N.J. 157, 161 (2012) (finding JCP&L was not immune from liability in a case involving a motor-vehicle accident and the alleged negligent placement of an electric utility pole). We did not base our opinion in McGlynn on the plaintiffs' purported status as third-party beneficiaries to any contractual obligation the defendants may have had to remove vegetation. Instead, we considered the plaintiffs' negligence claim and the overall fairness of imposing on JCP&L the duty asserted by the plaintiffs to inspect, maintain, and remove trees not for electrical risks but for the protection of motorists. We see no reason, including the regulations on which plaintiff relies, to depart from our holding in McGlynn declining to impose that duty.

Reviewing those regulations, we discern no intent by the Board to impose a duty on EDCs to inspect and manage vegetation for the purpose of protecting

12

passing motorists from non-electrical risks.  Plaintiff focuses on the phrase "public safety" in N.J.A.C. 14:5-9.1.  But the Board's concern for safety is nothing new.  See, e.g., N.J.A.C. 14:5-7.1(b) (2001) (referencing "the general obligation of a regulated EDC to provide sufficient resources in order to provide safe, adequate and proper service to its customers"); N.J.A.C. 14:5-7.7 (2001) (requiring EDCs to have "inspection and maintenance programs . . . as appropriate to furnish safe, proper and adequate service"); 34 N.J.R. 1390(a) (Apr. 1, 2002) (in discussing its proposed readoption of regulations regarding electric service, the Board states the regulations "are necessary in that they relate directly to the provision of safe, adequate and proper service by regulated New Jersey electric utilities").

And we do not interpret statutes and regulations by focusing on isolated phrases.  To determine the intent behind them, we "look not only at the particular statutory language but also to the design of the statute as a whole."  Est. of DeMartino, 373 N.J. Super. at 219.  Viewing the statutory and regulatory scheme as a whole, we perceive no basis to deviate from McGlynn or to impose on defendants "a general responsibility to tend to the trees so as to promote highway safety."  McGlynn, 434 N.J. Super. at 34.  Accordingly, we affirm the December 14, 2023 orders.

Because we affirm the orders, we do not address defendants' alternative argument regarding FESC's purported status as a shared service company.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-1071-24